## Dowell et al. *versus* Thomas et al.

Where it is alledged in a case stated, in an action of Ejectment, that the lineal and collateral heirs of a remote ancestor from whom the estate came, *became extinct, so far as the parties know,* it is sufficient evidence from which the Jury may find that there are no such heirs, and to find in favor of persons claiming as being the next of kin of the intestate, without regard to the ancestor or other relation from whom the estate came; agreeably to the provisions of the eleventh section of the intestate act of 1833.

ERROR to the Common Pleas of *Delaware County.*

*Case Stated.*—Abel Thomas, Castle Griffith and Margaret, his wife, late Margaret Thomas, in right of said Margaret, and William Griffith and Mary his wife, late Mary Thomas, in right of said Mary, *vs.* Enoch Dowell and Hanna Gorman.—In the Court of Common Pleas of Delaware County. No. 2. Aug. term, 1844.

It is agreed that a case be stated for the opinion of the Court,

[*Dowell v. Thomas.*]

to be considered in effect as a special verdict, in the following terms, to wit:

This action was brought to recover a tract of Land, situate in Upper Providence Township, in the county of Delaware, containing about two hundred acres, being the same described in the writ and declaration.

Of this tract, Thomas Jones became the fee-simple owner, on the 31st day of May, A. D. 1694, by virtue of a deed of bargain and sale made to him on that day, by David Meredith, and Mary his wife, and died seized thereof, in the month of October, A. D. 1727. (Prout said deed.)

On the 13th day of September, A. D. 1727, the said Thomas Jones made his last will and testament in writing, which was proved before the register of Chester County, on the 17th day of October following.

By this will, (copy annexed,) he devised as follows: "I give and bequeath unto my son Peter Jones, all my real estate, and the residue of my personal property, to him, his heirs and assigns forever; he paying all my just debts and legacies herein above named, with my funeral expenses, and keeping and performing all the expressions herein before expressed."

Peter Jones being seized of the said tract, by virtue of said devise, by his last will and testament, dated the ninth day of the Tenth month, A. D. 1731, and proved on the twenty-fifth day of July following, before the register of Chester County, devised the same in the following words: "I give unto my child unborn, all my lands, tenements, hereditaments, if a son, to him, his heirs and assigns forever; and if a daughter, to her and her heirs forever. And whether it be a son or a daughter, to be brought up by the profits of my lands, till they come to the age of man or woman." (Copy of will annexed.)

Ann Jones, the only child of Peter Jones, was born on the first day of March, 1731–2, and intermarried with *James* Thomas, on the eighth day of December, A. D. 1756. *Peter* Thomas, the only issue of this marriage, was born on the thirteenth day of October, A. D. 1758, and on the decease of his parents, the said tract of land descended to him, under the intestate laws of the Commonwealth, and he died seized of the same, in the month of July, A. D. 1841, intestate, unmarried, and without issue.

By the death of the said Peter Thomas, the lineal and collateral relations of the said Thomas Jones became extinct, so far as the parties hereto know.

The said *James* Thomas, the husband of Ann Jones, was the son of William Thomas, who died leaving issue, besides the said James Thomas, one son, viz., Amos Thomas, who deceased before the said Peter Thomas, leaving issue three children, to wit, the said Abel Thomas, Margaret Griffith, and Mary Griffith, the plain-

[Dowell *v.* Thomas.]

tiffs in this action, and who are the next of kin of the said Peter Thomas the intestate.\*

The question for the opinion of the court is, whether the plaintiffs are entitled to recover the said tract of land. If the plaintiffs are entitled to recover, then judgment to be entered in their favor, for the same, with costs of suit. If the plaintiffs are not entitled to recover, then judgment to be entered for the defendants, with costs of suit.

March 10, 1849.   Judgment for plaintiffs upon the case stated.

Errors asssigned.

1. The Court of Common Pleas erred in entering judgment for plaintiffs on the case stated.

2. The said court should have entered judgment for the defendants below on the case stated.

3. General errors.

The case was argued by *George L. Ashmead* for plaintiffs in error.   He contended that this case is ruled in their favor by the following decisions:

Maffit *vs.* Clark, 6 *Watts & Serg.* 258.

Father seized of land, died intestate, leaving two children, infants, one of whom soon after died, and afterwards, the other, unmarried, and without issue, the mother living. *Held,* that the brothers of the father took the estate by descent, under the 9th sec. of the act of 8th April, 1833, and not the mother.

Lewis *vs.* Gorman, 5 *Barr* 166, (a branch of this case.)

Per Bell, Prest., affirmed by Supreme Court. "He who claims an estate descended to an intestate, must show himself heir to him from whom it descended as perquisitor." Page 167. "Ann Thomas, the mother of the intestate, is not the ancestor from whom the estate descended, or by whom it was given. To find him, we must go back to Peter Jones, the grandfather, if not to Thomas Jones, the great-grandfather."

See pedigree at page 164, and cases cited by Judge Bell.

The plaintiffs below therefore cannot claim, not being of the blood of Peter or Thomas Jones.

They are not aided by the 11th sec. of the act of 8 April, 1833, for its meaning is said to be that the heir at common law shall not exclude others of the same consanguinity; and also, it is intended only to meet cases "not expressly provided for by this act," and therefore does not clash with the 9th section.

The defendants in error have not shown nor does the case stated show that Thomas Jones left no kindred, the language of the case

---

\* There is an error in the pedigree as stated in 5 *Barr*, page 164. The second William Thomas, should be Amos Thomas.                              Reporter.

[Dowell *v.* Thomas.]

stated being, "so far as the parties know," the meaning of which is, that the parties know nothing one way or the other. The defendants in error therefore have not made out a complete case.

*E. Darlington* and *Edwards* for defendants in error.—That the defendants below were mere occupiers; that the statement, as to the non-existence of heirs, is sufficient; that the 12th section of the intestate act of 1833 used the words, "*known heirs or kindred,* in default of whom the estate shall escheat;" from which it may be inferred, that where the heirs or kindred are not known to persons who have long been acquainted with the family, it is sufficient evidence to be referred to a Jury.

The opinion of the court was delivered April 18, by

BELL, J.—It is conceded that Lewis *vs.* Gorman, 5 *Barr* 164, rules the case in favor of the plaintiffs below, as next of kin of Peter Thomas, the last tenant; provided the case stated sufficiently ascertains that, by his death, a failure of the lineal and collateral kindred of his ancestor, Thomas Jones, has occurred.

The case states, "By the death of the said Peter Thomas, the lineal and collateral relations of the said Thomas Jones became extinct, *so far as the parties hereto know.*" Now the parties hereto are the parties litigant, whose respective rights hang upon this very fact; and it is therefore fair to presume they, and more especially the defendants, whose continued possession depends upon it, took some pains to inform themselves upon this subject. In considering the value of the admission made, we must therefore regard the respective parties in the light of witnesses, having knowledge of the family, from which the disputed estate is derived, and interested in ascertaining the truth. Suppose then, on the the trial of an issue directed to ascertain, whether, by the death of Peter Thomas, the kindred of Thomas Jones became extinct, such witnesses testified, from all they have heard and known, being conversant in the neighborhood, where the family resided, they believed the fact to be so; would not this be esteemed, at least *prima facie* evidence, sufficient to cast the burden of proof upon the antagonist party? Most certainly it would. It is every day's practice and experience to show, by such testimony, the extinction of kindred and the failure of issue. And it would be strange, indeed, if this were not permitted. Take this very case, by way of illustration; Thomas Jones, the prepositus, died in 1727, nearly a century and a quarter ago; he is known to have left to survive him but one son, Peter Jones, who died leaving but one daughter, Ann Jones, who in her turn, left but one son, Peter Thomas, the last owner, who died unmarried and childless, at the age of 83 years. Now it is out of the question, at this day, to procure witnesses who personally knew Thomas Jones, and therefore, from necessity, the

[Dowell *v.* Thomas.]

parties interested are compelled to rely on the information of persons, who, acquainted with the family, never heard of other relations than those enumerated in the case stated. The result of that information is distinctly enough set out. If it be not for the purposes of this action, it is certainly sufficiently stated to work an escheat of the land, for our statute of descents would give it to the commonwealth, in default of "known heirs or kindred." And the statute of escheats provides for cases where persons die seized, "without heirs or any known kindred." So that, if the plaintiff in error be right, upon just such an admission as we have here, the estate might be escheated, as late of Thomas Jones, while the acknowledged next of kin of his descendant, Peter Thomas, stood by powerless, because they could not, after the lapse of a period whereof the memory of man runneth not to the contrary, expressly and distinctly prove the kindred of the acquirer of the property to be extinct. Such an absurdity, of itself, sufficiently disproves the soundness of the position assumed here by the plaintiff in error. But, I repeat, that in cases like this, it is always deemed sufficient to shew by witnesses likely to know, they believe a particular line or family to be exhausted, in order to shift the onus.

It was insisted on the argument that the plaintiff below should have instituted an inquiry in England, Scotland, Ireland or Wales, in one of which countries it is probable the family of Jones had its origin, and where, in all likelihood, relatives may yet be found. The record does not disclose whence the family originally came; and if it did, the possibility of discovering relatives in Europe after the lapse of probably two centuries' sojourn in this country, is too remote to impose such a duty on the plaintiffs. If such an inquiry is to be made, it would rather seem to be incumbent on the defendants, (who shew no title,) under the *prima facie* case, established by their opponents.

We are satisfied enough is admitted to justify the judgment pronounced by the Court of Common Pleas; where, indeed, this point of evidence does not seem to have been made.

Judgment affirmed.